IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

STEVEN ERIC DISON                                                      PETITIONER

v.                                              No. 1:14CV42-SA-DAS

EARNEST LEE, ET AL.                                        RESPONDENTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* petition of Steven Eric Dison for a writ of *habeas* corpus under 28 U.S.C. § 2254. The State has moved to dismiss the petition as untimely filed under 28 U.S.C. § 2244(d)(2). Dison responded to the motion, and the court initially issued a memorandum opinion and final judgment dismissing the petition as untimely filed. Dison then sought reconsideration, requesting that the court find that equitable tolling applies because he was severely mentally ill during the time he could have timely filed his federal petition for a writ of *habeas corpus*. The court then granted Dison's motion for reconsideration and directed the State to provide his medical records, including mental health records, for the relevant time. The State provided the records, and the court has reviewed them. The matter is ripe for resolution. For the reasons set forth below, the court holds that Dison is not entitled to equitable tolling of the one-year *habeas corpus* limitations period. As such, the State's motion to dismiss will be granted and the instant petition for a writ of *habeas corpus* dismissed as untimely filed.

**Facts and Procedural Posture**

Steven Eric Dison is in the custody of the Mississippi Department of Corrections and is currently housed at the Mississippi State Penitentiary in Parchman, Mississippi. Dison was convicted of one count of burglary of a dwelling in the Circuit Court of Oktibbeha County, Mississippi. On November 4, 2009, he was sentenced as a habitual offender under Miss. Code Ann. § 99-19-81, to serve twenty-five years in the custody of the Mississippi Department of

Corrections ("MDOC"). Dison appealed his conviction and sentence to the Mississippi Supreme Court. On May 17, 2011, the Mississippi Court of Appeals affirmed the judgment of the circuit court. *Dison v. State,* 61 So.3d 975 (Miss.Ct.App. 2011) (Case No. 2010–KP–00183–COA). Dison did not seek rehearing, but on November 18, 2013 (over two years after the mandate had issued), he filed a petition for writ of certiorari to the Mississippi Supreme Court, which dismissed the petition as untimely filed under Rule 17(b) of the Mississippi Rules of Appellate Procedure. On March 8, 2012, Dison filed an Application to Proceed in the Trial Court with a Motion for Post-conviction Relief in the Mississippi Supreme Court (signed on March 7, 2012). On April 19, 2012, the Mississippi Supreme Court denied the application.

## One-Year Limitations Period

Decision in this case is governed by 28 U.S.C. § 2244(d), which provides:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or the laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending

shall not be counted toward any period of limitation under this subsection.

28 U. S.C. § 2244(d)(1) and (2).

As Dison never sought rehearing in the Mississippi Court of Appeals, fourteen days, the time period during which he could have sought such review, is added to the date on which his direct appeal ended and his conviction became final. *See* Miss. R. App. P. Rule 40(a); *see also Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 2003). Thus, Dison's conviction became final fourteen days after his conviction was affirmed, May 31, 2011 (May 17, 2011, plus 14 days). As Dison filed a state application for post-conviction relief ("PCR") as contemplated by 28 U.S.C. § 2244(d)(2) before May 31, 2012, the limitations period was tolled during its pendency. *See Grillete,* 372 F.3d at 769; *Flannagan v. Johnson*, 154 F.3d 196, 201 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806 (5th Cir. 1998). Dison signed the motion on March 7, 2012, and the court denied it on April 19, 2012. Thus, Dison's AEDPA limitations period was tolled for forty-three days, and the new deadline for the filing of Dison's federal *habeas corpus* relief became July 13, 2012 (May 31, 2012, plus 43 days).

Under the "mailbox rule," the instant *pro se* federal petition for a writ of *habeas corpus* is deemed filed on the date the petitioner delivered it to prison officials for mailing to the district court. *Coleman v. Johnson,* 184 F.3d 398, 401, *reh'g and reh'g en banc denied,* 196 F.3d 1259 (5th Cir. 1999), *cert. denied,* 529 U.S. 1057, 120 S. Ct. 1564, 146 L.Ed.2d 467 (2000) (citing *Spotville v. Cain,* 149 F.3d 374, 376-78 (5th Cir. 1998)). In this case, the federal petition was filed sometime between the date it was signed on March 5, 2014, and the date it was received and stamped as "filed" in the district court on March 7, 2014. Giving the petitioner the benefit of the doubt by using the earlier date, the instant petition was filed 600 days after the July 13, 2012, filing deadline.

## Equitable Tolling

Steven Dison alleges that he suffered from mental health problems during the one-year period in which he could have filed a timely petition for a writ of *habeas corpus*; thus, he argues that he is entitled to equitable tolling of the *habeas corpus* limitations period. "The doctrine of equitable tolling preserves a [petitioner's] claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir.2000) (per curiam) (internal quotations omitted). The one-year limitations period of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") in 28 U.S.C. § 2255(f) is not jurisdictional; thus, it is subject to equitable tolling. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir.2002). For this reason, a district court may toll the AEDPA limitations period. *Id.* at 229–30.

The decision whether to apply equitable tolling turns on the facts and circumstances of each case. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.2000); *see also Alexander v. Cockrell*, 294 F.3d 626, 628 (5th Cir.2002) (*per curiam*). However, a court may apply equitable tolling only "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998); *see also Minter v. Beck,* 230 F.3d 663, 666–67 (4th Cir.2000) ("[E]quitable tolling of the AEDPA's one year limitation period is reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.") (quotation omitted).

The petitioner bears the burden of establishing that equitable tolling is warranted. *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), modified on reh'g, 223 F.3d 797 (2000) (per curiam). In order to satisfy his burden, the petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely

filing his § [2254] motion. *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007).

**Dison's Mental Health Timeline**

As set forth above, Dison's conviction became final on May 31, 2011, which set the initial deadline for seeking federal *habeas corpus* relief at May 31, 2012. Dison, however, filed a state application for post-conviction collateral relief prior to the initial deadline. That application remained pending for 43 days, during which Dison enjoyed statutory tolling of the limitations period under 28 U.S.C. § 2244(d)(2), thus moving the final deadline to July 13, 2012 (May 31, 2012 + 43 days). Thus, Dison's opportunity to file a federal petition for a writ of *habeas corpus* ran from the date his conviction became final (May 31, 2011) until the final deadline for seeking *habeas corpus* relief expired (July 13, 2012). Dison argues that the mental problems he suffered between those dates prevented him from pursuing his rights diligently – and constituted an extraordinary circumstance that stood in the way of the timely filing of the instant petition. As discussed below, Dison enjoyed periods of good mental health for many months during this time – more than enough time to seek federal *habeas corpus* relief.

The court has reviewed Dison's medical records during the relevant period (May 31, 2011 to July 13, 2012). As set forth below, the court holds that, though Dison suffered from episodes of severe mental illness, he received treatment and functioned normally for the majority of that period. On May 20, 2011 (just before his conviction became final), Dison became severely depressed and suicidal after the Mississippi Supreme Court affirmed his conviction and 25-year mandatory sentence. He was placed on suicide watch during this time. He was placed on psychiatric medication; his condition improved, day by day, and he was removed from suicide watch and returned to the General Population on June 2, 2011. On July 13, 2011, he refused to

take his medications, and on July 25, 2011, he refused psychiatric treatment and requested to be released from psychiatric care.  On September 2, 2011, a psychiatrist assessed Dison, found him to be stable, recommended that he stay on his medications, and scheduled a follow-up in three months.  On October 12, 2011, Dison obtained 35 capsules of Dilantin (100 mg capsules) (an anti-seizure drug) and took them all.  He told medical staff that he took the pills in an attempt to commit suicide.  He was sent to a local hospital, treated for overdose of Dilantin, and returned to the facility the following day.  Upon his arrival, he was placed on suicide watch again.  On October 17, 2011, he told medical staff that he had taken the Dilantin to "get a buzz," not to commit suicide.  After examination and assessment, the psychiatrist discharged him, discontinued suicide watch, and released him back to his unit.

On December 16, 2011, Dison was in a much healthier state.  He told the prison psychiatrist, "I am doing fine.  Can I close my file?"  The psychiatrist recorded his objective findings:

> 38 year-old white male, well-built, well-nourished.  Looks stated age.  Dressed in prison uniform.  Held a good conversation and answered most of the questions appropriately.  Thought content and thought process normal.  Alert, attentive, and oriented to person, place, and time.  Pleasant, calm, cooperative.  Denied suicidal or homicidal ideations.  Mood:  good.  Affect:  full range.

The psychiatrist found that Dison was stable without medications, discontinued them, and closed Dison's file.

On February 15, 2012, Dison became paranoid, believing that someone was trying to poison him.  Consistent with that belief, he would only eat crackers.  He also heard noises, but only at night.  His psychological assessment was Major Depressive Disorder.  The psychiatrist prescribed a medication to treat Dison's symptoms of psychosis and continued that treatment on February 28, 2012.  Dison made no more complaints of psychological problems for the remainder of the relevant

period, and, on August 1, 2012 (just after the federal *habeas corpus* deadline expired), he reported that he had no mental health concerns.

Given the imprecise nature of ascertaining Dison's level of impairment during the course of his incarceration, the court will give him the benefit of the doubt when determining his periods of normality. With that in mind, it appears that Dison was greatly impaired from May 20, 2011 (when his suicidal thoughts began), until July 25, 2011 (when he requested to be released from psychiatric care) – a period of just over 2 months. He was also impaired from October 12, 2011 (when he took the 35 Dilantin capsules) until December 16, 2011 (when he stated that he was doing fine and wanted to close his psychiatric file) – another period of 2 months. His final period of impairment was a short one, from February 15, 2012 (when he believed someone tried to poison him and heard noises at night) until February 28, 2012 (when he received antipsychotic medications) – a period of 14 days. All told, Dison was impaired for a total of 145 days – out of a total of 411 days during which he could have taken action to toll the limitations period. As such, during the time in which he could have sought federal *habeas corpus* relief, Dison had a total of 266 days – over 8½ months – during which he was unimpaired (not seeking psychological treatment). This is more than ample time in which to seek *habeas corpus* relief, and Dison did not do so. For these reasons, the court holds that Dison was neither actively misled nor prevented in some extraordinary way from asserting his rights, and he has not alleged any "rare and exceptional" circumstance to warrant equitable tolling. *Ott v. Johnson,* 192 F.3d 510, 513-14 (5th Cir. 1999).

## Actual Innocence

Dison also raises a claim of "actual innocence" in his federal *habeas corpus* petition, arguing that he had an alibi witness whom his attorney failed to subpoena and call at trial. In *McQuiggin v. Perkins,* 133 S.Ct. 1924, 1928 (2013), the United States Supreme Court held that

"actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup[v.Delo,* 513 U.S. 298 (1995)] and *House [v. Bell,* 547 U.S. 518 (2006)], or, as in this case, expiration of the statute of limitations." *See also Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003); *Dowthitt v. Johnson,* 230 F.3d 733, 741 (5th Cir. 2000). However, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (Citations omitted). Though Dison raises a bare claim of actual innocence, he has neither identified the witness nor provided an affidavit from the witness regarding what her testimony might have been. As such, Dison has not provided any new evidence to support his claim of actual innocence, and he is not entitled to equitable tolling of the limitations period for his petition.

The instant petition will thus dismissed with prejudice and without evidentiary hearing as untimely filed under 28 U.S.C. § 2244(d). A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 29th day of April, 2015.

                                                **/s/ Sharion Aycock**
                                                **U.S. DISTRICT JUDGE**